

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

November 19, 1970

Honorable Warden Terry
San Saba County Attorney
San Saba, Texas

Opinion No. M-732

Re: Whether 978f-5b, Vernon's
Penal Code is constitu-
tional.

Dear Mr. Terry:

You have asked an opinion of this office as to whether
Article 978f-5b, Vernon's Penal Code is constitutional.
Your question, rephrased, is as follows:

Is Article 978f-5b of the Penal Code of
the State of Texas, which requires the purchase
of a Fish Farm License at a sum of $25.00 before
certain persons and firms can grow fish upon
private property and sell the same, constitutional?

Article 978f-5b, enacted in 1969 (Acts of the 61st
Legislature, Page 884, Chapter 298), reads as follows:

"Section 1. The Parks and Wildlife Department
is authorized and directed to issue numbered
licenses to fish farmers operating a business
on private lands. It shall be unlawful for
any person, firm, or corporation to engage in
the business of fish farming as defined in this
Act without first obtaining the required license.

"Section 2. Definitions:
"(a) A 'Fish Farmer' is any person, firm
or corporation engaged in the business of production,
propagation, transportation, possession and sale
of fish except propagated for bait purposes, raised
in private ponds or reservoirs.
"(b) 'Private Ponds' are defined as ponds or
reservoirs located wholly within the enclosed lands

-3552-

of an owner or lessor which is not connected to any stream carrying public waters not subject to overflow from any public waters.

"(c) 'Owner' is defined as any person, partnership, corporation or firm or several persons licensed as 'Fish Farmers' by the Parks and Wildlife Department.

"Section 3. Before any owner in this state shall engage in the business of fish farming for the purpose of sale, barter, or exchange, a 'Fish Farm' license shall first be procured from the Parks and Wildlife Department. The annual fee for a Fish Farm license or Fish Farm Vehicle license shall be $25 and the license shall be on a form provided by the Parks and Wildlife Department. Such license shall be valid from September 1 or issuance date whichever is later and shall expire August 31 following the date of issuance. A license shall be required for each separate premise on which Fish Farms are located. A 'Fish Farm vehicle license' shall be required for each vehicle transporting fish from Fish Farms for the purpose of sale from the vehicle. Vehicles transporting fish from Fish Farms when no sales are made from the vehicle shall carry a bill of lading reflecting the species of fish, number, Fish Farm owner's name, location, and license number of Fish Farm and the destination of the cargo, but said vehicle shall not be required to obtain a Fish Farm vehicle license.

"Section 4. Each 'Fish Farm' shall maintain records reflecting sales and shipments of fish and such records shall be open for inspection by designated personnel of the Parks and Wildlife Department.

"Section 5. Fish from 'Fish Farms' may be harvested by any mean, may be of any size, and may be sold at any time of the year, and in any county of the state.

"Section 6. Bass and crappie propagated under the terms of this Act may be sold only for stocking purposes and shall not be sold for resale except to another licensed Fish Farm. Bass and crappie may not be sold for consumption by individuals, cafes and restaurants, or sale by Retail Fish Dealers, and Wholesale Dealers. All other fish propagated on 'Fish Farms' may be sold for any purpose.

"Section 7. Chapter 630, 59th Legislature, Regular Session, 1965, is hereby repealed, all other laws and parts of laws in conflict herewith are repealed to the extent of conflict only.

"Section 8. Any person, firm or corporation who fails to obtain the required license herein or who violates any provisions of this Act is guilty of a misdemeanor and upon conviction is punishable by a fine of nor less than $50 nor more than $200."

Similar in both language and requirements to the above quoted statute is Article 934a of Vernon's Penal Code, which prescribes certain licenses for commercial fisherman and wholesale dealers in fish, oysters or shrimp or other edible aquatic products. Article 934a on numerous occasions has been held constitutional by the courts of Texas and the United States Supreme Court as a valid inspection fee. Gulf Fisheries Co. v. Darrouzet, (D.C. 1927) 17 F.2d 374, affirmed 48 S.Ct. 227, 276 U.S. 124, 72 L.Ed. 495; Ex parte Mehlman, 127 Cr.R. 257, 75 S.W.2d 98, (1903); Brownsville Shrimp Co. v. Miller, 207 S.W.2d 911 (Tex. Civ.App., 1948, error ref., n.r.e.).

As stated in Attorney General's Opinion No. 1473 (1939),

"Licensing measures quite generally provide for the payment of a sum by the licensee to defray the expense of issuing the license and examining the applicant or supervising the business to be conducted. Such charges are usually denominated 'fees'. A license fee is not a tax, but a price exacted for the exercise of a privilege. It is levied under the police and not the taxing power, and therefore

differs essentially from both a property and an occupation tax. As a rule, payment of the license fee is made a prerequisite to the right to exercise the privilege sought, and in many cases pursuit of the activity without previous payment of the requirements fee is made a criminal offense. (And cases cited) (Under-scoring ours) cf. 27 Tex.Jur., p. 892."

We are cognizant of the growing commercial fish raising industry in the State of Texas. Article 978f-5b patently has as its object the regulation of commercial fish raising and marketing with imposition of a license fee to support the regulation costs. In our opinion, the fee imposed neither violates Article VIII, Sections 1 and 2, Texas Constitution, nor the Fourteenth Amendment. See H. Rouw Co. v. Texas Citrus Commission, 247 S.W.2d 231, 234 (Tex.Sup. 1952), wherein the Court said of such a statute:

" . . . if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes."

It is therefore, our opinion that Article 978f-5b prescribing license fees for "Fish Farms" is constitutional as a lawful exercise of the state's police power. The law in this respect is stated in Antieau's Modern Constitutional Law, Vol. 1, Sec. 3.2, p. 296:

"The federal government, under the Fifth Amendment, and the states, under the Fourteenth, can regulate the use of private property whenever such regulation is reasonable and reasonably related to the public health, safety, morality, or general welfare. It is only unreasonable, arbitrary or capricious interference with the use of private property that is unconstitutional. See Goldbatt v. Hempstead, (1962), 369 U.S. 590; Nectow v. Cambridge, (1928), 277 U.S. 183; 12 Tex.Jur. 2d 415, Constitutional Law, Sec. 70, and cases cited.

Our opinion, when we consider Article 978f-5b as a whole and in the context of the relevant facts and circumstances

related, is that the primary purpose of the enactment and of the $25.00 fee by it is not the raising of revenue but the regulation of the persons and property engaged in the occupation of fish farming. This being so, the license law may be upheld. City of Ft. Worth v. Gulf Refining Co., 125 Tex. 512, 83 S.W.2d 610, 617 (1935), in which the Court held that:

> "A license law is one which confers upon those who comply therewith a right denied all others, and it is immaterial whether or not it provides a fee therefor. . ."

The Court there also pointed out that under the general rule as to reasonableness of the fee, "the sum levied cannot be excessive nor more than reasonably necessary to cover the costs of granting the license and of exercising proper public regulations. . ." (at page 618). Since we have been presented no facts to establish any unreasonable fee, we must presume that the statute is constitutional.

The Act establishes a reasonable classification as to the class of persons engaging in the occupation of fish farming in private waters. See Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273 (1927), 54a RR 1397. Thus, as held in the above case, waters from springs which are neither surface waters nor subsurface streams with defined channels, nor riparian water in any form, are held to be the exclusive property of the land owners. The statute does not operate to discriminate against these landowners, since they are the only persons who have any ownership in the waters described.

## S U M M A R Y

Article 978f-5b, which prescribes license fees for "Fish Farms", is constitutional as a lawful exercise of the state police power.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

-3556-

Honorable Warden Terry, Page 6 (M- 732 )


Prepared by Bennie W. Bock, II
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Glenn Brown
Ed Esquivel
Scott Garrison
Bob Lattimore
Roger Tyler

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant